**GENERAL TELEPHONE COMPANY OF THE SOUTHWEST, Appellant,**

v.

**CITY OF POINT COMFORT,**
Texas, Appellee.

No. 1173.

Court of Civil Appeals of Texas,
Corpus Christi.

June 30, 1977.

Hubert M. Preston, San Angelo, for appellant.

Tom A. Garner, Jr., Rhodes, Garner & Roberts, Port Lavaca, for appellee.

OPINION

YOUNG, Justice.

In this telephone rate case General Telephone Company of the Southwest brings this appeal from a judgment granting a temporary injunction favorable to the City of Point Comfort. The injunction prohibits the Company from increasing the rate schedule established by the Point Comfort City Council on April 22, 1975.

On January 1, 1975, the Company attempted to increase rates through the City Council of Point Comfort. Whereupon the City sought a temporary injunction to stop the rate increase by enforcing the previous rate ordinance. On February 20, 1975, the City's request for injunction was granted. Following this dispute the City granted the Company a rate increase by ordinance passed April 22, 1975.

In December of that same year the Company made a new request for a rate increase. Then the City turned this request over to a Citizens Advisory Committee in January of 1976. After seven to eight months of review the Committee recommended an increase in the rate schedule. The City, however, rejected these suggestions and wrote a letter to the Company proposing a new rate schedule in August of 1976. These new suggestions, although different from the Committee's suggestions, were essentially the same when total dollars were compared. On August 16, 1976, the Company notified the City that it was increasing the rates for Point Comfort and that the City had no authority to regulate rates because no contract existed between the City and Company giving the City such authority. On August 30, 1976, the City sought another temporary injunction to bar this increase and to enforce the rate schedule of April 22, 1975. After a trial to the court without a jury on September 28, 1976, this injunction was granted on October 20, 1976. It is from this order granting a temporary injunction that the Company has perfected its appeal.

On November 5, 1953, the City had granted the original franchise right to the Company to provide telephone service to Point Comfort. The original service to the City did not provide for extended area service.[1]

---

1. This is a type of service which allows subscribers to initiate calls to neighboring communities without toll charges. In the instant case these neighboring communities include Port Lavaca, Port O'Connor and Seadrift.

On January 5, 1954, May 25, 1958 and April 10, 1973, the Company had sought and had received rate increases from the City.

In May of 1970, the Company instituted nonoptional extended area service for Point Comfort, Port Lavaca, Seadrift and Port O'Connor. Prior to this time, and again in 1973, the Company sought and received the City's approval for all rate increases. In January of 1975, the Company for the first time attempted a rate increase without the City's approval. As noted previously, this action was enjoined but the City nevertheless granted an increase on April 22, 1975. The Company accepted this increase until December of 1975 when it sought another increase. After an eight month delay and after the City's rejection of the Company's request and a compromise offer, the Company rejected the authority of the City to regulate rates. Whereupon the Company established a new schedule of rates to be effective on August 16, 1976. This action by the Company precipitated the City's filing the suit we have before us. After a hearing the trial court ordered a writ of injunction to issue providing in part as follows:

". . . pending final hearing and determination of this cause enjoining General Telephone Company of the Southwest, Defendant herein, from violating Plaintiff's current telephone rate ordinance dated April 22, 1975, and from charging telephone rates to the subscribers of Defendant, General Telephone Company of the Southwest's Point Comfort Telephone Exchange which are in excess of the rates provided in said current telephone rate ordinance, or in any way, violating the terms of said current City telephone ordinance dated April 22, 1975. . . ."

In its points 2 and 3, the Company asserts error by the trial court in its action of granting the City's request for temporary injunction because: 2) as of September 1, 1976, the Texas Public Utility Commission has exclusive original jurisdiction over telephone rates; 3) the City had lost any authority it alleged should be protected since the Public Utility Commission assumed full and exclusive authority over telephone utilities on September 1, 1976. The resolution of these two points resolves the entire case. We, therefore, do not deem it necessary to consider appellant's points 1 and 4.

The Public Utility Regulatory Act is codified as Tex.Rev.Civ.Stat.Ann. art. 1446c (1976–1977 Supp.). Some of the provisions of the Act we deem appropriate to our consideration of the case before us are as follows:

"Sec. 18. Subject to the limitations imposed in this Act, and for the purpose of *regulating rates*, operations, and services so that such *rates* may be just, fair, and reasonable, and the services adequate and efficient, the commission shall have exclusive original jurisdiction over the business and property of all tele-communications utilities in this state.

\* \* \* \* \* \*

Sec. 87.(b) The regulatory authority shall assume jurisdiction over *rates* and service of public utilities on September 1, 1976." (Emphasis supplied).

The Court pointed out in *Southwestern Bell Telephone Company v. City of Kountze*, 543 S.W.2d 871, 874 (Tex.Civ.App. —Beaumont 1976, no writ) the following:

"Using the broadest possible language, the Legislature conferred exclusive original jurisdiction upon the Public Utilities Commission . . . over the business and property of all telecommunications utilities for the purpose of regulating 'rates, operations, and services.'"

■ In *Kountze*, the closing of a business office was held to fall within "services" category as defined in the Act. Likewise we hold that the problem of the instant case of whether to maintain rates at a level set by the City or to raise rates to a level requested by the Company falls within the "regulating rates" category as defined by the Act. And like the question of closing a business office in *Kountze*, the Act vests in

the Commission the exclusive jurisdiction to determine the question of what rates should be charged in the case before us. And any complaint about the rates charged or to be charged must be made to the Commission.

We further agree with the reasoning in *Kountze* wherein the Court said:

". . . In essence, the Act repealed the law giving jurisdiction to the district court and it contained no savings clause; thus, it takes away the right to proceed in a pending case undetermined at the time when it (the Act) becomes effective. . . ."

It is clear to us, therefore, that the proper forum to initiate litigation about the question of what rates should be charged by the Company to the subscribers within the City is the Commission.

The City replies to the Company's contention that the Commission has exclusive jurisdiction in the rate matter before us with these assertions: that this suit was filed August 30, 1976, and the Commission did not obtain exclusive original jurisdiction over telephone rates until September 1, 1976; that this is not a rate making case, but merely a suit to enforce a current City ordinance.

About the filing of the suit before September 1, 1976, the Court in *Kountze*, had before it a similar contention. Supported by appropriate case authority, the Court in *Kountze*, pointed out that want of jurisdiction of the subject matter of the suit will arrest a cause at any stage of the proceedings; that if at any time during its progress it becomes apparent that the court has no authority under the law to adjudicate the issues presented, it becomes the duty of the court to dismiss the case. We agree with that reasoning and hold that because the rate setting controversy between the City and the Company was not finally resolved before September 1, 1976, the Commission has now become the only forum to litigate that controversy.

About the City's contention that this is not a rate making case but an ordinance violation problem, we simply point out

again that the City by this suit attempts to keep the telephone rates in Point Comfort the same as set out in the City's ordinance of April 22, 1975. And the Company attempts to raise the rates to a level it considers "just, fair, and reasonable." To us, therefore, this controversy is no more than a rate making dispute and the City's attempt to characterize it as something else is without merit.

Finally, the City in an ancillary contention argues that the Company has accepted benefits conferred upon it by operation of the franchise and rate ordinances that have been in effect since November 5, 1953. The City's reasons that under the holding of *General Telephone Company of Southwest v. Cities Littlefield*, 498 S.W.2d 375 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.) this course of conduct by the City and the Company thus established a contractual relationship between the parties; that therefore the City has a contractual right to set rates that has become vested, and that right has not been taken away by the Act. Even if the City be correct that it has a vested contractual right, the Act does not destroy the rights of the City; as we have heretofore noted, it just takes away from the district court the jurisdiction to adjudicate the question and confers that jurisdiction upon the Commission. *Southwestern Bell Telephone Company v. City of Kountze*, supra. Appellant's points 2 and 3 are sustained.

All of which brings us to the correct disposition of this appeal in that we have determined that a reversal is appropriate. Again we look to *Kountze* and the cases therein cited. There it was held that when case becomes moot on appeal, as has the instant case, all previous orders and judgments should be set aside and the cause, not merely the appeal, should be dismissed. See *Commissioners Court of Harris County v. Peoples National Utility Company*, 545 S.W.2d 47 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). Therefore, we reverse and set aside all orders of the trial court and dismiss the cause. Costs are divided between the parties equally.

Reversed and Dismissed.