TWO G'S, INC., a Colorado Corporation, doing business as The Godfather, Plaintiff-Appellee,

v.

John B. KALBIN, Director of Excise and Licenses, City and County of Denver, State of Colorado, Defendant-Appellant.

No. 81SA220.

Supreme Court of Colorado, En Banc.

June 27, 1983.

Max P. Zall, City Atty., John R. Palermo, Mark R. Muller, Lee G. Rallis, Asst. City Attys., Denver, for defendant-appellant.

No appearance for plaintiff-appellee.

LOHR, Justice:

The Director of Excise and Licenses for the City and County of Denver (director) suspended the cabaret license of Two G's, Inc. (licensee), finding that the licensee had violated a municipal ordinance prohibiting

it from admitting persons under the age of eighteen into its cabaret. The licensee commenced an action in Denver District Court for review of the director's decision. The district court set aside the director's order, holding that the applicable municipal ordinance is unconstitutional, and the director appeals from that judgment.[1] We hold that the question of the constitutionality of the ordinance was not properly before the district court and that the record supports the director's finding that the licensee violated the ordinance. Therefore, we reverse the judgment of the district court and order that the director's decision be reinstated.

The licensee operated a business called "The Godfather" in the city of Denver, offering its patrons beverages, including 3.2 beer, and live and recorded music for dancing. To operate this establishment, the licensee obtained from the City and County of Denver the appropriate license for a "class E cabaret," defined as follows in the Denver Municipal Code:

> **Class E Cabaret.** Any establishment or business licensed for the sale of fermented malt beverages (3.2% beer), as defined in the Colorado Beer Code, in which live or recorded music, or live or recorded vocal entertainment, or both live or recorded music and live or recorded vocal entertainment, other than adult amusement or entertainment, is offered for the entertainment of the patrons or guests, and in which establishment only the patrons or guests are permitted to dance, shall be known as a Class E Cabaret for the purposes of this Article.

*Denver Revised Municipal Code* 923.1–1(8) (1978).[2] Another Denver ordinance prohibits a class E licensee or its employees from allowing persons under the age of eighteen to enter its establishment:

> It shall be unlawful for any Class D or Class E Cabaret licensee, or any employee or agent of a Class D or Class E Cabaret licensee, to permit or allow any person under eighteen years of age to patronize or gain entry into such Class D or Class E Cabaret, or for any person under 18 years of age to gain entry or attempt to gain entry into a Class D or E Cabaret, unless accompanied by a parent or legal guardian; PROVIDED, HOWEVER, that this prohibition shall not apply where the Class D or E Cabaret is a bona fide restaurant habitually and continuously serving meals to guests.

*Denver Revised Municipal Code* 923.10–5(1) (1978) [3] (hereinafter "section 923.10–5(1)").

After receiving police reports that The Godfather had admitted persons under the age of eighteen onto its premises, the director served the licensee with an order to show cause why its class E cabaret license should not be revoked or suspended. A hearing was held before a hearing officer for the director during which the licensee and the City and County of Denver presented evidence. The testimony of six witnesses presented by the city established that the licensee had admitted underage persons into The Godfather on two occasions. On the first occasion, two seventeen-year-old girls were allowed to enter after they showed expired temporary Colorado driver's permits that they had obtained from older friends. On the second occasion, two underage girls were allowed to enter without showing any identification after an employee of the licensee convinced another employee who was working at the door that the girls were over the age of eighteen.

In defense, the owner of The Godfather testified that his employees had acted contrary to his instructions in accepting the expired driver's permits as proper identification and in allowing persons to enter without showing any proof of age. The owner testified that he instructs his em-

---

1. This court has jurisdiction over the appeal from the district court judgment because the constitutionality of an ordinance is at issue. Section 13–4–102(1)(b), C.R.S.1973.

2. Presently codified at *Denver Revised Municipal Code* 6–31(8) (1982). For convenience, we refer throughout this opinion to the section numbers of the ordinances as they were at the time of the license suspension proceedings in this case.

3. Now codified at *Denver Revised Municipal Code* 6–41 (1982).

ployees to request each person seeking admission to produce identification displaying that patron's photograph and birthdate. He noted, however, that difficulties arise in achieving compliance with this policy because several states other than Colorado do not issue photographic identification cards or driver's licenses. Additionally, counsel for the licensee presented argument that section 923.10–5(1) is unconstitutional because it conflicts with state law, is not rationally related to any legitimate health or safety concern of the municipality, and provides no guidance to cabaret owners as to which forms of identification are acceptable for proof of age.

The hearing officer issued a recommended decision finding that the evidence established that the licensee had violated section 923.10–5(1). The hearing officer recommended that the class E cabaret license be suspended for a period of thirty days and that fifteen days of the suspension period be held in abeyance for a year, conditioned upon the licensee's compliance with the Denver Municipal Code. The hearing officer expressed no opinion about the constitutionality of the ordinance.

The licensee filed objections to the recommended decision and requested that further oral argument be allowed on the constitutional questions prior to issuance of the director's final decision. The director then issued his final decision, in which he denied the request for oral argument, stating that the licensing authority is without jurisdiction to hear matters of law attacking the constitutionality of an ordinance. The director found the licensee's other objections to be without merit and adopted the hearing officer's recommended decision in full.

The licensee then filed in Denver District Court its "Complaint for Review Pursuant to C.R.S.1973, Section 24–4–106 [of the State Administrative Procedure Act] and Rule 106 of the Colorado Rules of Civil Procedure." In its complaint, the licensee alleged that the evidence does not support the director's decision and that the decision should be set aside under the authority granted the district court by section 24–4–106, C.R.S.1973 (1982 Repl. Vol. 10), and C.R.C.P. 106(a)(4). Further, the licensee averred that section 923 of the Denver Municipal Code is unconstitutionally vague and improperly conflicts with state statutes, and requested that the section "be declared unconstitutional" by the court. The director filed an answer defending on the grounds, among others, that the constitutional questions were not properly before the district court; that the licensee failed to join indispensable parties, the State of Colorado and its Attorney General; that the director's decision is supported by the evidence; and that the applicable municipal ordinance is not unconstitutional. After hearing oral argument, without taking additional evidence, the district court ruled that section 923 of the Denver Municipal Code is unconstitutional and that all proceedings against the licensee under that section must "cease and desist." The court reasoned that the city has created an irrational classification by enacting section 923.10–5(1) because establishments that serve 3.2 beer and provide live music for dancing must exclude minors, while other businesses that serve 3.2 beer but do not provide such entertainment may permit minors on their premises.

The director appeals from the district court judgment, arguing that the court exceeded the permissible scope of review under C.R.C.P. 106(a)(4) in ruling on the constitutionality of the ordinance. Alternatively, the director presents several arguments that section 923.10–5(1) is constitutional. We do not reach the constitutional issues because we agree that they were beyond the scope of the matters properly presented to the court.

## I.

The licensee's complaint in the district court is captioned as a review proceeding under the State Administrative Procedure Act (APA),[4] and under C.R.C.P. 106. We consider these two review procedures in turn to determine whether they apply to

4. Sections 24–4–101 through 24–4–108, C.R.S. 1973 (1982 Repl.Vol. 10).

license suspension proceedings under the Denver Municipal Code and whether the scope of review permissible under each allows consideration of challenges to the constitutionality of municipal ordinances. We then address the possibility that review of the constitutional issues can be accomplished by treating the case as an application for a declaratory judgment under C.R. C.P. 57.

### A.

■ Section 24-4-106 of the APA provides "a plain, simple, and prompt judicial remedy to persons or parties adversely affected or aggrieved by agency actions." Section 24-4-106(1). A court reviewing an agency decision under APA procedures may consider constitutional questions, including the constitutionality of a statute. Section 24-4-106(7); *Jeffrey v. Colorado State Department of Social Services,* 198 Colo. 265, 599 P.2d 874 (1979). Other sections of the APA define the types of agencies that must adhere to its procedures. The term "agency" is defined as:

> any board, bureau, commission, department, institution, division, section, or officer of the state, except those in the legislative or judicial branches and except state educational institutions administered pursuant to title 23 (except articles 8 and 9, parts 2 and 3 of article 21, and parts 2 to 4 of article 30), C.R.S.1973, and part 6 of article 32 of this title.

Section 24-4-102(3). The application of APA procedures is further limited in section 24-4-107:

> This article applies to every agency of the state having statewide territorial jurisdiction except those in the legislative or judicial branches, courts-martial, military

commissions, and arbitration and mediation functions. It applies to every other agency to which it is made to apply by specific statutory reference; but, where there is a conflict between this article and a specific statutory provision relating to a specific agency, such specific statutory provision shall control as to such agency.

■ The Denver Department of Excise and Licenses is not a state "agency" having "statewide territorial jurisdiction" as required by sections 24-4-102(3) and -107 in order to bring the director's decisions within the ambit of review procedures under section 24-4-106. The cabaret licenses required by the Denver Municipal Code apply only to establishments within the City and County of Denver, and the director was acting pursuant to authority vested in him by the Denver City Charter and that city's municipal code in suspending the licensee's cabaret license.[5] The cabaret licensing requirements are based solely on the Denver Municipal Code and not on state statutes. This is not a case where local licensing authority action is reviewable under special statutory procedures such as the judicial review provisions of the Colorado Beer Code, section 12-46-118, C.R.S.1973 (1978 Repl. Vol. 5), or the Colorado Liquor Code, section 12-47-141, C.R.S.1973 (1978 Repl. Vol. 5), which supersede the APA provisions. *See* section 24-4-107; *Chroma Corp. v. Campbell,* 44 Colo.App. 387, 619 P.2d 74 (1980); *Continental Liquor Co. v. Kalbin,* 43 Colo.App. 438, 608 P.2d 353 (1979). Accordingly, neither the APA nor any special purpose statute supplies applicable judicial review procedures in the present case.

---

**5.** We have held that a board of county commissioners is an "arm of the state" and hence an "agency" under the APA in considering whether the county can be deemed an "aggrieved person or party" for the purpose of challenging another agency's action. *Board of County Commissioners v. State Board of Social Services,* 186 Colo. 435, 528 P.2d 244 (1974); *Board of County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970). These cases were decided prior to an amendment allowing coun-

ties to bring actions for judicial review. Section 24-4-106(4.5). Also, in *Board of County Commissioners v. State Board of Social Services, supra,* we noted that interpretation of the predecessor statute to section 24-4-107 was not at issue. *See also Chroma Corp. v. Adams County,* 36 Colo.App. 345, 543 P.2d 83 (1975). These cases provide no guidance on the issue before us of whether the director's decisions are subject to APA judicial review procedures.

## B.

■ Turning to C.R.C.P. 106(a)(4), the alternative authority cited by the licensee, we conclude that the procedures afforded by that rule are available to review the director's decision to suspend the licensee's cabaret license but that C.R.C.P. 106(a)(4) review does not provide authority for the district court's consideration of the constitutional issues raised in this case. That rule provides in pertinent part:

In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in these rules:

(4) Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy.... Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion.

In the present case the director exercised a judicial or quasi-judicial function in suspending the licensee's cabaret license for noncompliance with a municipal ordinance after holding evidentiary hearings. *See Cronin v. Ward,* 144 Colo. 192, 355 P.2d 655 (1960) (C.R.C.P. 106(a)(4) review of decision of Denver Manager of Safety and Excise granting restaurant and liquor license); *Norris v. Grimsley,* 41 Colo.App. 231, 585 P.2d 925 (1978) (C.R.C.P. 106(a)(4) review of decision of Rocky Ford City Council to grant liquor license). Since the APA procedures do not apply to the director's decision to suspend or revoke a license issued pursuant to municipal ordinance, no "plain, speedy and adequate remedy" other than C.R.C.P. 106(a)(4) review is available to challenge the license suspension on the grounds that the director exceeded his jurisdiction or abused its discretion. Under the terms of C.R.C.P. 106(a)(4), therefore, review of the director's decision to determine whether he exceeded his jurisdiction or abused his discretion is appropriate.

We must determine next whether the challenge to the constitutionality of section 923.10–5(1) is within the scope of C.R.C.P. 106(a)(4) review. The licensee's constitutional arguments include the following: state law preempts the subject covered by the ordinance; enactment of the ordinance is not within Denver's police powers; section 923.10–5(1) is so vague as to offend due process; and the cabaret classifications violate equal protection of the laws. These are challenges to the constitutionality of the ordinance on its face. We have previously considered whether constitutional questions of this type can be considered in a C.R.C.P. 106(a)(4) review. In *Tri-State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670 (Colo.1982), we stated:

The fact that a constitutional issue is raised does not preclude certiorari review. *See Snyder v. City of Lakewood,* [189 Colo. 421, 427–28, 542 P.2d 371, 375–376 (1975)]. Rather, the question is whether the act that the aggrieved party seeks to have reviewed is legislative or quasi-judicial. A constitutional challenge to an ordinance as applied is concerned with the application of a general rule or policy "to specific individuals, interests, or situations" and is generally a quasi-judicial act subject only to C.R.C.P. 106(a)(4) review. *Snyder v. City of Lakewood, supra,* 189 Colo. at 427, 542 P.2d at 375. In contrast ... a facial constitutional challenge concerns a general rule or policy applicable to an open class of individuals and, as such, is generally a legislative act subject to review under C.R.C.P. 57 rather than C.R.C.P. 106(a)(4).

647 P.2d at 676, n. 7. Accordingly, we hold that the facial constitutionality of section 923.10–5(1) is beyond the scope of issues reviewable under C.R.C.P. 106(a)(4) and that the district court "exceeded its jurisdiction or abused its discretion," C.R.C.P. 106(a)(4), in addressing that question.

## C.

We note that where mere review of the record under C.R.C.P. 106(a)(4) would not afford adequate relief to the aggrieved par-

ty, a declaratory judgment action under C.R.C.P. 57 is available and may be joined with a proceeding for C.R.C.P. 106(a)(4) review. *Grant v. District Court*, 635 P.2d 201 (Colo.1981); *Snyder v. City of Lakewood, supra.* In the present case, the licensee's complaint in district court, while not citing C.R.C.P. 57, did request that section 923.10–5(1) "be declared unconstitutional." However, even if we were to construe the complaint liberally in order to characterize this proceeding as one for declaratory judgment, the licensee failed to meet the essential conditions of making the City and County of Denver a party and serving the state attorney general with the complaint and affording him an opportunity to be heard. Section 13–51–115, C.R.S.1973; C.R.C.P. 57(j). The failure to join the city is fatal to any contention that the question of the constitutionality of section 923.10–5(1) was properly before the district court as an incident of a claim for declaratory relief.[6] *Meier v. Schooley*, 147 Colo. 244, 363 P.2d 653 (1961); *see Tri-State Generation & Transmission Co. v. City of Thornton, supra.*

Since the constitutional question was not properly before the district court, we reverse the judgment of that court holding section 923.10–5(1) of the Denver Municipal Code unconstitutional.

## II.

As explained in part I.B. of this opinion, the issues of whether the director exceeded his jurisdiction or abused his discretion were properly before the district court on C.R.C.P. 106(a)(4) review. Because the district court based its judgment on the constitutional question, it did not specifically rule on those subjects of inquiry permitted under C.R.C.P. 106(a)(4). However, the court did state prior to ruling on the constitutional issue that "under the terms of the ordinance in question, there is no question in the record that there was a violation."

■ After reviewing the evidence presented to the hearing officer, we agree with the district court's statement that a violation of section 923.10–5(1) was established. The uncontradicted evidence presented by the city showed that the licensee on two occasions allowed persons under the age of eighteen to enter its establishment in violation of that municipal ordinance.[7] The licensee argues, without citing authority, that the penalty imposed by the director was arbitrary and capricious because no evidence was presented that the minors actually consumed 3.2 beer on the premises. We find this argument unpersuasive because violation of section 923.10–5(1) does not depend upon the actual consumption of beer by minors and because the sanction imposed was not a relatively severe one considering the range of possible sanctions available, including revocation of the license. *See Denver Revised Municipal Code* 923.13 (1978).[8] The director acted pursuant to authority vested in him by the Denver Charter in suspending the licensee's cabaret license and therefore did not exceed the scope of his jurisdiction. *Denver City Charter* A9.8 and A9.9 (1982).

6. The City and County of Denver objected to the licensee's failure to join the attorney general as a party in its answer filed in district court and in its brief before this court. Although the attorney general need not be made a party in a proceeding contesting the constitutionality of a municipal ordinance, he is entitled to notice and an opportunity to be heard. Section 13–51–115; C.R.C.P. 57(j). Where failure to give notice to the attorney general is discovered for the first time on appeal, and this is the only defect in an otherwise proper declaratory judgment proceeding, the appropriate relief is vacation of the judgment and remand for further proceedings to permit such notice to be given. *Lakewood Pawnbrokers, Inc. v. City of Lakewood*, 182 Colo. 315, 512 P.2d 1241 (1973).

7. The owner's testimony that he is confused about what forms of identification he may accept as proper proof of age and that his employees acted contrary to his instructions in admitting the minors does not tend to establish that the licensee did not violate the ordinance as it is written. Arguments that the ordinance should allow such defenses by the owner and that the ordinance does not provide sufficient guidance to cabaret owners may be relevant to the constitutionality of the ordinance but are not relevant in determining whether the director erred in finding a violation.

8. Now codified at Denver Revised Municipal Code 6–78 (1982).

The judgment of the district court is reversed, and the case is remanded to that court for reinstatement of the director's final order.