
OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

September 7, 2000

The Honorable Eddie Lucio, Jr.
Chair, Special Committee on Border Affairs
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. JC-0282

Re: Whether a travel trailer may only be considered an "improvement" under section 1.04(3) of the Tax Code if the same person owns the land on which it is located, and related questions (RQ-0223-JC)

Dear Senator Lucio:

You ask two questions about ad valorem taxation. First, you ask whether a travel trailer may only be considered an "improvement" under section 1.04(3) of the Tax Code if the same person owns the land on which it is located. We conclude that section 1.04(3)(B) does not foreclose as a matter of law the possibility that a travel trailer attached to someone else's property is an improvement within the meaning of section 1.04(3)(A). You also ask about the consequences of a political subdivision's failure to hold a public hearing regarding its intent to tax personal property otherwise exempt under section 11.14 of the Tax Code. Although failure to comply with the requirements of section 11.14 may void an assessment of personal property taxes, this office is unable to determine whether a political subdivision substantially complied with those requirements.

We begin with your question about the definition of "improvement" as it relates to travel trailers. The Tax Code provides for the taxation of all real and tangible personal property over which this state has jurisdiction unless the property is exempt by law. *See* TEX. TAX CODE ANN. § 11.01 (Vernon Supp. 2000). Under the Tax Code, the term "real property" includes an improvement. *See id.* § 1.04(2)(b). Section 1.04(3) of the Tax Code defines the term "improvement" in pertinent part as follows:

> (A) a building, structure, fixture, or fence erected on or affixed to land;

> (B) a transportable structure that is designed to be occupied for residential or business purposes, whether or not it is affixed to land, if the owner of the structure owns the land on which it is located, unless the structure is unoccupied and held for sale or normally is located at a particular place only temporarily.

*See id.* § 1.04(3).

This office recently addressed this definition as it relates to travel trailers in Attorney General Opinion JC-0150, which concluded that a travel trailer attached to a leased lot will generally remain the property of the person leasing the lot from the trailer park and will be taxable to the lessee of the lot as personalty rather than realty. *See* Tex. Att'y Gen. Op. No. JC-0150 (1999). There, this office opined that the section 1.04(3)(B) definition of "improvement," including within the meaning of the term transportable structures designed for residential use "if the owner of the structure owns the land on which it is located," was not relevant to the taxation of travel trailers installed in trailer park lots owned by a person other than the trailer owner. *See id.* at 2. Rather, the opinion focused on the section 1.04(3)(A) definition, including within the term a "structure . . . erected on or affixed to land." *Id.* It concluded that the question whether a structure has been affixed to land and has become an improvement as defined by section 1.04(3)(A) is a question of fact, involving the owner's intent to make the attachment permanent, that cannot be resolved by this office as a matter of law. *See id.* at 3. While the opinion suggested that in most cases it is "safe to presume that trailer owners do not intend that, by hooking up their trailers, they will cede ownership of them to the trailer park operators," it also noted that, "[i]n the rare instance where such was the case, the improvement would be taxable as real property to the trailer park operator." *Id.*

Stating that our construction of section 1.04(3) in Attorney General Opinion JC-0150 is ambiguous, your first question asserts that the statute creates "two separate tests for improvements — one for structures which are non-transportable and one for transportable structures."[1] It appears that you would like this office to conclude, as a matter of law, "that travel trailers, which are transportable structures by nature, can only be considered improvements if the same person owns the land and the transportable structure." Request Letter, note 1, at 2. We do not believe that Attorney General Opinion JC-0150's construction of section 1.04(3) as it applies to travel trailers is unclear or requires modification. We also disagree with the construction of section 1.04(3) urged in your letter that subsection (B) is the only part of the definition of improvement applicable to travel trailers.

Your query contends, in essence, that subsection (B) of section 1.04(3) is intended to create an exception to subsection (A) for travel trailers, mandating the taxation of travel trailers as personal property whenever they are located on land owned by another. The determination that property is personal rather than real may have broad implications for its taxation, because personal property benefits from a greater array of tax exemptions under the constitution and the Tax Code than does real property. *See, e.g.,* TEX. CONST. art. VIII, § 1(d), (e); TEX. TAX CODE ANN. § 11.14 (Vernon Supp. 2000) (providing local option exemption for most personal property). Tax exemptions are not favored in the law and must be express. *See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.,* 804 S.W.2d 894, 899 (Tex. 1991) ("exemptions from taxation are not favored by the law"); *Swearingen v. City of Texarkana,* 596 S.W.2d 157, 159 (Tex. Civ. App.–Texarkana 1979, writ ref'd n.r.e.) ("An exemption may not be raised by implication, but the intention to relieve from taxation must affirmatively appear."). Had the legislature intended subsection (B) of section 1.04(3)

---

[1]Letter from Honorable Eddie Lucio, Jr., Chair, Special Committee on Border Affairs, Texas State Senate, to Honorable John Cornyn, Texas Attorney General at 1-2 (Apr. 19, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

to exclude from the definition of improvement all transportable structures designed for occupancy except those located on land owned by the owner of the structure, we believe that the legislature would have made this exclusion express. Rather, we believe it is clear from section 1.04(3) on its face that, under subsection (A), a travel trailer that has been permanently affixed to land is an improvement and is taxable as real property. Under subsection (B), a travel trailer is also an improvement and taxable as real property if the owner of the trailer owns the land on which it is located. It is not relevant under subsection (B) whether or not the travel trailer has been affixed to land.

In sum, we believe it is clear from the face of section 1.04(3) that subsection (B) is intended to expand rather than restrict the universe of structures taxable as improvements. As we acknowledged in Attorney General Opinion JC-0150, it is highly unlikely as a matter of fact that the owner of a travel trailer will intend to permanently affix his her trailer to the property of another, creating an improvement to real property within the meaning of subsection (A). However, we cannot conclude that subsection (B) as a matter of law forecloses the taxation of a travel trailer located on land owned by another as an improvement under subsection (A).

You also ask about "the consequences of the failure of a governing body of a political subdivision to give proper notice [of its intent to tax personal property] if it then proceeds to collect the tax." Request Letter, *supra* note 1, at 2. Section 11.14 of the Tax Code provides that "[a] person is entitled to an exemption from taxation of all tangible personal property, other than manufactured homes, that the person owns and that is not held or used for production of income." TEX. TAX CODE ANN. § 11.14(a) (Vernon Supp. 2000). However, section 11.14 gives political subdivisions the option to tax personal property exempt from taxation under subsection (a) if it follows certain procedures, which are set forth in subsections (c) and (e). Subsection (c) provides that:

> The governing body of a taxing unit, by resolution or order, depending upon the method prescribed by law for official action by that governing body, may provide for taxation of tangible personal property exempted under Subsection (a). If a taxing unit provides for taxation of tangible personal property as provided by this subsection, the exemption prescribed by Subsection (a) does not apply to that unit.

*Id.* § 11.14(c). In addition, subsection (e) provides that:

> A political subdivision choosing to tax property otherwise made exempt by this section, pursuant to Article VIII, Section 1(e), of the Texas Constitution, may not do so until the governing body of the political subdivision has held a public hearing on the matter, after having given notice of the hearing at the times and in the manner required by this subsection, and has found that the action will be in the public interest of all the residents of that political subdivision. At the hearing, all interested persons are entitled to speak and present

> evidence for or against taxing the property. Not later than the 30th day prior to the date of a hearing held under this subsection, notice of the hearing must be [published three times in a newspaper of general circulation in the ten-day period prior to the hearing].

*Id.* § 11.14(e).

Section 11.14 does not permit a political subdivision to tax personal property otherwise exempt under subsection (a) unless it has held a public hearing according to the requirements of subsection (e). We have not located any case addressing the consequences of a political subdivision's failure to adhere to these requirements. Cases addressing taxing units' adherence to the public hearing requirements of section 26.06 of the Tax Code, providing for a public hearing prior to the adoption of a tax rate, generally state that "[f]ailure to comply with statutory directives in assessing taxes voids the assessment," *Corpus Christi Taxpayer's Ass'n v. City of Corpus Christi*, 716 S.W.2d 578, 580 (Tex. App.–Corpus Christi 1986, writ ref'd n.r.e.), but also suggest that substantial compliance with a statutory directive is sufficient, *see, e.g., id.*; *Houston Lighting & Power Co. v. Dickinson Indep. Sch. Dist.*, 641 S.W.2d 302, 306 (Tex. App.–Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Lumberton Mun. Util. Dist. v. Cease*, 596 S.W.2d 601, 604-05 (Tex. Civ. App.–Beaumont 1980, no writ); *Federal Land Bank of Houston v. State*, 314 S.W.2d 621, 630 (Tex. Civ. App.–Amarillo 1958), *rev'd on other grounds*, 329 S.W.2d 847 (1959); *Birdwell v. City of Boyd*, 233 S.W.2d 603, 605 (Tex. Civ. App.–Fort Worth 1950, no writ). Whether a governmental body has substantially complied with statutory notice requirements is generally a question of fact beyond the purview of an attorney general opinion. *See, e.g.,* Tex. Att'y Gen. Op. No. H-1081 (1977) at 2 ("When the substantial compliance standard is applicable, whether it has been met depends upon the facts of each case."). This office, which does not make fact findings, cannot make that determination.[2]

Finally, it is not clear whether you ask about section 11.14 with respect to taxation of travel trailers as personal property. In the event that you are concerned about the taxation of travel trailers as personal property, however, another consideration would come into play. Section 11.14 provides a tax exemption for "all tangible personal property, *other than manufactured homes*, that the person owns and that is not held or used for production of income." TEX. TAX CODE ANN. § 11.14(a) (Vernon Supp. 2000) (emphasis added). Any statute authorizing a tax exemption for personal property must be consistent with the terms of the constitutional provision authorizing the exemption. *See, e.g.,* TEX. CONST. art. VIII, § 1(d) (requiring the legislature by general law to "exempt from ad valorem taxation household goods not held or used for the production of income and personal effects not held or used for the production of income" and providing that "the Legislature by general law may exempt from ad valorem taxation: (1) all or part of a personal property homestead" and (2) *"all other tangible personal property, except structures which are personal property and are used or occupied as residential dwellings* and except property held or used for the production of income")

---

[2]*See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

(emphasis added). Thus, whether a travel trailer may be taxed as personal property will depend not only on whether the governmental body has complied with the procedural requirements of section 11.14, but also whether the constitution permits its exemption from taxation.

## S U M M A R Y

Section 1.04(3)(B) of the Tax Code does not foreclose as a matter of law the possibility that a travel trailer attached to someone else's property is an improvement within the meaning of section 1.04(3)(A). Although a political subdivision's failure to comply with the procedural requirements of section 11.14 of the Tax Code may void an assessment of personal property taxes, this office is unable to determine whether a political subdivision substantially complied with those requirements.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee